UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**STACY S.,**

**Plaintiff,**

    v.                                         Case No. 1:20-cv-01338-TPK

**COMMISSIONER OF SOCIAL**            **OPINION AND ORDER**
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

       Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on July 22, 2020, denied Plaintiff's applications for disability insurance benefits and supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 14), and the Commissioner has filed a similar motion (Doc. 15). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant.

### I. BACKGROUND

       On August 22, 2017, Plaintiff protectively filed her applications for benefits, alleging that she became disabled on May 15, 2017. After initial administrative denials of her claim, Plaintiff appeared at an administrative hearing held on July 24, 2019. Both Plaintiff and a vocational expert, Michele Erbacher, testified at that hearing.

       The Administrative Law Judge issued an unfavorable decision on August 14, 2019. In that decision, the ALJ first concluded that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022, and that she had not engaged in substantial gainful activity since the alleged onset date. He then found that Plaintiff suffered from severe impairments including degenerative disc disease of the cervical, thoracic, and lumbar spine. He further determined that these impairments, viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

       Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform light work except that she could frequently, but not constantly, bend and twist, rotate, or flex her neck. Additionally, she could not work around unprotected heights or on dangerous machines, tools, or chemicals, and could engage in over-the-shoulder

reaching only occasionally.

The ALJ next determined that Plaintiff could not do her past relevant work as a licensed practical nurse, a job generally performed at the medium exertional level.  He found, however, that even with her limitations, Plaintiff could perform jobs like routing clerk and merchandise marker.  The ALJ also determined that these jobs existed in significant numbers in the national economy.  The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in her motion for judgment, raises a single issue.  She asserts that the ALJ's residual functional capacity finding was not supported by substantial evidence because that finding conflicted with the opinion of the consultative examiner and the ALJ did not explain how the conflict was resolved.  She also contends that this is not harmless error because, if she were limited to sedentary work, she might well have qualified for disability under the medical-vocational guidelines.

## II.  THE KEY EVIDENCE

The Court begins its review of the evidence by summarizing the testimony given at the administrative hearing.  It will then discuss the pertinent medical records.

Plaintiff, who was 49 years old when her applications were filed, testified, first, that she had last worked as a licensed practical nurse, a job she had held since 2004.  However, by March of 2017, the pain had made it impossible for her to do that job.  In her job, she lifted much more than 50 pounds, and doing so made her arms and legs weak.  She also had trouble sitting at a computer due to neck pain.  She was afraid if she did any other job, she would eventually become unable to walk.  Her pain and weakness made it hard to care for herself and she fell frequently.

When asked to describe her pain, Plaintiff said she hurt all over her body.  Her neck pain was a constant ache and her back and leg pain was sharp and shooting.  Any physical activity, including cleaning and cooking, aggravated her symptoms.  She was treating her pain with ice, Motrin, and heat wraps.  She used to enjoy walking places but did not do that any more.  Plaintiff had been given a workup for her condition and surgery was recommended, but she opted against it.  Otherwise, she had been having a hard time obtaining medical care and had to discontinue the medications she was taking, which included a muscle relaxant and medication for anxiety and for neuropathic pain.  Her reasons for not seeking treatment included lack of insurance for a time and the absence of public transportation where she lived.

In a typical day, Plaintiff sat most of the time, but never comfortably.  She made simple meals a few times per week and did laundry as well, but slowly.  She could not run the vacuum and did no yard work.  She was unable to sit and read because she had to move around every fifteen minutes or so, but she was able to listen to music.  She could stand for ten to twenty minutes but did very little walking.  In the last six to eight months, she had not gone grocery

shopping.  Plaintiff could not reach overhead and said her arms went numb.  Lastly, she testified to being irritable and lacking motivation due to pain as well as having terrible anxiety.

The vocational expert, Ms. Erbacher, first testified that Plaintiff's past work as an LPN was typically performed at the medium exertional level but that Plaintiff performed it at the very heavy level.  The expert was then asked questions about a person who was limited to light work activity and who could frequently, but not constantly, bend and twist and rotate and flex the neck,  The person also had to avoid certain workplace hazards.  She responded that such a person could not do Plaintiff's past work but could do jobs like mail clerk or merchandise marker.  The latter job involved some overhead reaching on an occasional basis.  If the person were limited to only occasional bending and twisting of the neck, the mail clerk job (but not the merchandise marker job) would be problematic, but he or she could perform the duties of a routing clerk.  All of the jobs she identified required frequent handling and fingering and did not permit changing positions at will.  They could be performed by someone limited to routine, repetitive, low stress jobs, however, as well as someone who could tolerate only occasional interaction with others.

The pertinent medical records show, first, that Plaintiff was being treated for severe back and neck pain as early as 2016.  She had undergone a spinal fusion at C5-6 in 2008.  In 2017, she sought emergency room treatment for back pain so severe that she had trouble walking.  MRI studies done at that time showed disc bulges and severe spinal canal narrowing.  She was treated with pain medications and discharged with a note excusing her from heavy lifting.  At a later examination done by Dr. Gibbons, she reported overwhelming neck and back pain in the past six months with weakness in both arms and severe headaches.  He recommended revision neck surgery with the removal of hardware and diskectomies at C4-5 and C6-7.

On December 21, 2017, Dr. Ransom performed a consultative psychiatric evaluation.  At that time, Plaintiff was taking medication for depression and anxiety and said they were effective and that her signs and symptoms were in remission.  Dr. Ransom observed no limitations in Plaintiff's ability to do basic work functions.  (Tr. 462-65).  On the same day, Plaintiff attended an internal medicine examination performed by Dr. Dave.  Plaintiff reported that her worst problem was her neck but that she also had back pain radiating into her legs.  Her household activities included cooking, cleaning, doing laundry, and shopping.  On examination, her gait was normal and she could walk on her heels and toes without difficulty.  There were restrictions in the range of motion of her neck and back with tenderness in the lower back, but straight leg raising was negative bilaterally and she had full range of motion in her joints.  Dr. Dave diagnosed recent episodes of bilateral lower extremity weakness and head drooping, neck pain, lumbar stenosis, and hypertension.  She thought Plaintiff had moderate to marked limitations in her ability to engage in repetitive bending and twisting through the cervical spine and in her ability to lift, carry, push, and pull heavy objects, and she also needed to avoid ladders, heights, and sharp, dangerous, heavy equipment and machinery.  (Tr. 466-70).

There is also a medical opinion rendered by a state agency reviewer, Dr. Poss.  According to that opinion, Plaintiff was capable of light work activity but had the same limitations as those

identified by Dr. Dave, including avoiding repetitive bending and twisting through the cervical spine and not operating heavy machinery or working at heights.  (Tr. 99).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

The sole issue raised by Plaintiff relates to the way in which the ALJ evaluated the opinion evidence from Dr. Dave, the consultative examiner.  According to Plaintiff, the ALJ both relied on Dr. Dave's opinion and failed to incorporate all of the limitations described in that opinion.  Those limitations, in Plaintiff's view, are inconsistent with the ability to do light work.  Compounding the error, Plaintiff claims that the ALJ was obligated to, but did not, provide an explanation for rejecting the more restrictive portions of Dr. Dave's opinion, including those relating to Plaintiff's ability to lift, carry, push, pull, and bend and twist through the cervical spine.  The Commissioner responds that the ALJ's residual functional capacity determination accurately reflects the moderate to marked limitations found by Dr. Dave and that the ALJ was

also entitled to rely on Dr. Poss's assessment of Plaintiff's functional capacity and on Plaintiff's testimony concerning her symptoms, which, in the Commissioner's view, also support the ALJ's decision.

The ALJ explained his decision this way.  First, he set forth his rationale for finding that Plaintiff's testimony concerning the severity of her symptoms was not entirely consistent with the evidence and for determining that her activities of daily living were consistent with the ability to do a limited range of light work - findings that Plaintiff does not challenge.  Next, the ALJ determined that Dr. Poss's opinion was persuasive, based as it was on the evaluations done by Dr. Gibbons and Dr. Dave, whose conclusions were viewed as "consistent with and supportive of Dr. Poss' opinion." (Tr. 26).  Lastly, the ALJ considered Dr. Dave's opinion and found it "somewhat persuasive," *id*., noting that it contained a fairly vague expression of Plaintiff's functional limitations.  Nevertheless, the ALJ also stated that "the limitations as opined by Dr. Dave are not inconsistent with the reduced range of light work, as determined in this decision." *Id*.

In their memoranda, the parties present competing arguments on the question of whether this last statement is accurate.  According to Plaintiff, a medical opinion delineating marked to moderate limitations is consistent with only sedentary work.  She cites a number of recent decisions from this Court which, she contends, support that proposition.  The Commissioner, on the other hand, cites case authority which, in the Commissioner's view, holds that there is no error when an ALJ interprets such an opinion to permit light work.  The Court will review these cases briefly before turning to its analysis of the dispositive issue presented here.

Plaintiff relies heavily on this Court's decisions in *Jordan J. v. Comm'r of Soc. Sec.*, 2021 WL 978846 (W.D.N.Y. March 16, 2021) and in *Daniel S. v. Comm'r of Soc. Sec.*, 2021 WL 2227911 (June 2, 2021) in support of her argument.  However, neither of those cases holds that there is always an inconsistency between a finding of moderate to marked impairments in some physical abilities and a finding that the claimant can do a limited range of light work activity.  In fact, in both cases, the ALJ had limited the claimant to sedentary work, so the question presented in this case was simply not addressed.  Additionally, the Commissioner correctly notes that there are many decisions from this Court which hold that moderate (as opposed to marked) restrictions in the ability to sit, stand, and walk are consistent with the ability to do light work.  *See, e.g., Harrington v. Colvin*, 2015 WL 790756 (W.D.N.Y. Feb. 25, 2015).  But neither of these arguments address the specific issues posed here, which is whether the particular marked to moderate restrictions found by Dr. Dave are consistent with the ALJ's residual functional capacity finding.

One of the two limitations imposed by Dr. Dave dealt with lifting, carrying, pushing, and pulling heavy objects.  Assuming that Plaintiff was moderately (or even markedly) limited in this area, it is reasonable to interpret this particular restriction as consistent with the lifting and carrying requirements of light work, which involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," *see, e.g.,* 20 C.F.R. §

416.967(b). Had Dr. Dave concluded that Plaintiff was severely limited in her ability to lift and carry lighter objects as well, there may have been some inconsistency between her findings and the ALJ's decision, but that is not the situation here. This Court has found that moderate limitations in the ability to lift and carry heavy objects are consistent with the ability to perform light work. *See Lee W. v. Comm'r of Soc. Sec.*, 2021 WL 1600294 (Apr. 23, 2021). Consequently, the ALJ did not need to provide any further explanation of how this limitations was accounted for in his residual functional capacity finding.

The other restriction found in Dr. Dave's report is a moderate to marked restriction on Plaintiff's ability to engage in repetitive bending and twisting through the cervical spine. The ALJ attempted to accommodate this restriction by limiting Plaintiff to frequent, but not constant, bending, twisting, flexing, and rotating her neck. It is debatable whether those restrictions directly correlate to Dr. Dave's finding. The ALJ's decision does contain language suggesting that he did not fully credit Plaintiff's testimony concerning her neck symptoms, based in part on his observations during the administrative hearing, *see* Tr. 23, and in part upon Dr. Dave's report, *see* Tr. 25, but he ultimately concluded that Dr. Dave's restrictions were consistent with the residual functional capacity finding, so there is an apparent conflict here.

That said, the Court finds that any error was harmless. The testimony of the vocational expert confirmed that even if Plaintiff were limited to occasional bending and turning of her neck, she could perform the jobs of merchandise marker and routing clerk. The ALJ adopted that testimony in his decision. Consequently, any inconsistency between the ALJ's residual functional capacity finding and Dr. Dave's opinion had no impact on the conclusion that Plaintiff could perform substantial gainful activity. Plaintiff's argument that any error here was not harmless is limited to the determination that she could do light, rather than sedentary, work, and the issue of how often she could bend or twist her neck is unrelated to the question of whether she should have been limited to sedentary work. Thus, the Court finds no basis upon which to order a remand here.

## V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 14), **GRANTS** the Commissioner's motion (Doc. 15), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**